## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| GENNA BARTON, JASON MARTIN, individually and on behalf of all others similarly situated, | **CLASS AND COLLECTIVE ACTION COMPLAINT** |
| Plaintiffs, | **JURY TRIAL DEMANDED** |
| v. | Case No: |
| DENSO MANUFACTURING MICHIGAN, INC., a Michigan corporation, | Hon. |
| Defendant. | |

## COLLECTIVE AND CLASS ACTION COMPLAINT

Plaintiffs, Genna Barton and Jason Martin ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through their undersigned attorneys, hereby bring this Collective and Class Action against Denso Manufacturing Michigan, Inc. ("Defendant") to recover unpaid wages, liquidated damages, interest, attorney's fees, costs, and other relief as appropriate under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq*. and the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq*. Plaintiffs' allegations herein are based upon knowledge as to matters relating to themselves and upon information and belief as to all other matters:

1

## **JURISDICTION AND VENUE**

1.    This Court has subject-matter jurisdiction over Plaintiffs' FLSA and FMLA claims pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims raise a federal question under 29 U.S.C. § 201, *et seq.* and 29 U.S.C. § 2601, *et seq.*

2.    Additionally, this Court has jurisdiction over Plaintiffs' collective action FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

3.    Defendant's annual sales exceed $500,000 and it has more than two employees, so the FLSA applies in this case on an enterprise basis. Defendant's employees engaged in interstate commerce and therefore they are also covered by the FLSA on an individual basis.

4.    Venue lies in this District pursuant to 28 U.S.C. § 1391 because the Defendant is incorporated in this District and subject to personal jurisdiction in this District.

## **PARTIES**

5.    Plaintiff, Genna Barton ("Plaintiff"), is an adult resident of Springfield, Michigan and a former employee of Denso Manufacturing Michigan, Inc. Defendant employed Plaintiff Barton from approximately February 26, 2018 until March 2023. Plaintiff's consent to join form is attached as **Exhibit A**.

2

6.     Plaintiff, Jason Martin ("Plaintiff"), is an adult resident of Battle Creek, Michigan and a former employee of Denso Manufacturing Michigan, Inc. Defendant employed Plaintiff Martin from approximately April 2015 until April 2023. Plaintiff's consent to join form is attached as **Exhibit B**.

7.     Additional putative FLSA Collective members were or are employed by Defendant as hourly employees during the past three years and their consent forms will also be filed in this case.

8.     Defendant, Denso Manufacturing Michigan, Inc., is a Michigan corporation whose registered agent is CSC-Lawyers Incorporating Service, with a registered address of 3410 Belle Chase Way, Ste. 600, Lansing, Michigan 48911.

## FACTUAL ALLEGATIONS

9.     On or about February 26, 2018, Defendant hired Plaintiff Barton as an hourly employee. Plaintiff Barton worked at Defendant's location at 1 Denso Rd. Ste. 1, Battle Creek, MI 49037.

10.     Plaintiff Barton's most recent base hourly rate of pay was $20.21.

11.     In or about April 2015, Defendant hired Plaintiff Martin as an hourly employee. Plaintiff Martin also worked at Defendant's location at 1 Denso Rd. Ste. 1, Battle Creek, MI 49037.

12.     Plaintiff Martin's most recent base hourly rate of pay was $40.50.

**The FLSA Regular Rate of Pay**

13.    In addition to the base rate of pay, Defendant incorporated various routine and non-discretionary bonuses into its payment structure.

14.    For example, during Plaintiffs' employment with Defendant, on occasions where they worked the second shift, they also earned a shift differential of an additional $1.00 per hour.

15.    As non-exempt employees, Defendant's hourly employees were entitled to full compensation for all overtime hours worked at a rate of 1.5 times their "regular rate" of pay.

16.    Under FLSA, the regular rate is the "keystone" to calculating the correct overtime rate. *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419 (1945).  It is "the hourly rate actually paid the employee for the normal, nonovertime workweek for which he is employed." 29 C.F.R. §778.108.

17.    No matter how an employee is paid—whether by the hour, by the piece, on a commission, or on a salary—the employee's compensation must be converted to an equivalent hourly rate from which the overtime rate can be calculated.  29 C.F.R. §778.109. "The regular hourly rate of pay is determined by dividing the employee's total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by the employee in that workweek for which such compensation was paid." *Id*.

18.     Defendant's shift premiums and other remuneration do not fall within any of the statutory exclusions from the regular rate as provided in 29 U.S.C. §§ 207(e)(1)-(8).

19.     There is a statutory presumption that remuneration in any form must be included in the regular rate calculation.  Defendants carry the burden to establish that any payment should be excluded. *Acton v. City of Columbia, Mo*., 436 F.3d 969, 976 (8th Cir. 2006) (citing *Madison v. Resources for Human Dev. Inc.*, 233 F.3d 187 (3rd Cir. 2000)). Thus, determining the regular rate starts from the premise that all payments made to Defendant's hourly employees for work performed are included in the base calculation unless specifically excluded by statute.

20.     Once the total amount of an employee's "regular" compensation is deduced, "the determination of the regular rate becomes a matter of mathematical computation." *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 425 (1945). The regular rate must be expressed as an hourly rate because, although any method of compensating an employee is permitted, Defendant imposes its overtime requirements in terms of hourly wages. Thus, if necessary, an employer must convert an employee's wages to an hourly rate to determine compliance with the statute.

21.     Plaintiffs' "total remuneration" included not only their base hourly pay, but also any shift differentials. Indeed, 29 C.F.R. § 548.502 expressly provides that "[e]xtra overtime compensation must be separately computed and paid on payments

5

such as bonuses or shift differentials which are not included in the computation of the established basic rate….”; *see also* 29 C.F.R. §778.207(b) (Under FLSA, the regular rate of pay must consist of all forms of remuneration including non-discretionary bonuses and “such extra premiums as night shift differentials… and premiums paid for hazardous, arduous, or dirty work.”).

22.    However, Defendant failed to incorporate any shift differentials into its hourly employees’ regular hourly rate calculation, resulting in *prima facie* violations of the FLSA.

23.    Consistent with Section 7(a) of the Fair Labor Standards Act, Plaintiffs and those similarly situated are entitled to overtime pay equal to 1.5 times their regular rate of pay for hours worked in excess of forty (40) hours per week.

24.    Plaintiffs and those similarly situated have regularly worked in excess of 40 hours a week and have been paid some overtime for those hours but at a rate that does not include Defendant’s shift premiums as required by the FLSA.

25.    For example, Plaintiff Barton’s pay stub for the pay period 8/8/2022 through 8/21/2022 shows 81.25 hours of work, a base hourly rate of $21.10, and gross earnings of $1,718.28 inclusive of $1.25 in shift premium pay. However, her overtime rate does not account for the shift premium pay and, therefore, violates the FLSA.

26.    Further, Plaintiff Martin’s pay stub for the pay period 1/11/2021

6

through 1/24/2021 shows 100 hours of work, a base hourly rate of $33.41, and gross earnings of $4,213.39 inclusive of $1.17 in shift premium pay. However, his overtime rate does not account for the shift premium pay and, therefore, violates the FLSA.

27.    Defendant paid Plaintiffs, and its other hourly employees, additional non-discretionary remuneration that Defendant also failed to include in the regular rate calculation.

28.    To the extent that any of Defendant's premium compensation paid to Plaintiffs, and those similarly situated, could be qualified and applied as a credit under 29 U.S.C. §§ 207(7)(h), those credits may only be applied to the same workweek or work period in which the premiums were paid. *Herman v. Fabri-Centers of Am., Inc*., 308 F. 3d 580, 590-92 (6th Cir. 2002).

29.    In a Department of Labor Opinion Letter dated December 23, 1985, the Deputy Administrator stated: "We wish to point out that the surplus overtime premium payments, which may be credited against overtime pay pursuant to section 7(h) of [the] FLSA, may not be carried forward or applied retroactively to satisfy an employer's overtime pay obligation in future or past pay periods." *Opinion Letter Fair Labor Standards Act* (flsa), 1985 WL 304329 at 3 (1985).

**FMLA Interference and Retaliation**

30.    Defendant maintained a written policy related to procedures and

7

protocols under the Family Medical Leave Act.

**Plaintiff Martin's Attempt to Exercise FMLA Rights**

31.     Between December 2022 and April 2023, Plaintiff Martin sought from Defendant, and was approved for, different FMLA leaves for different serious health conditions.

32.     Plaintiff Martin submitted all required FMLA paperwork to Defendant's HR department with as much notice as practicable.

33.     In mid-March 2023, Plaintiff Martin informed his direct supervisor of his need for additional FMLA leave due to a serious health condition.  Plaintiff's direct supervisors acknowledged Plaintiff Martin's stated need for leave.

34.     Due to a serious downturn in his health, Plaintiff Martin called off work by leaving voicemails on Defendant's call-in system on March 19, 20, and 21 due to his serious health condition.

35.     During this time, Plaintiff Martin was in the process of seeking the FMLA application paperwork from Defendant so that he could give it to his doctor complete.  Plaintiff Martin remained in regular contact with his direct supervisors (including but not limited to Chris Perkins) regarding his FMLA leave status and his efforts to obtain the necessary paperwork from Defendant.

36.     On or about April 4, 2023, Plaintiff Martin finally received the necessary paperwork from Defendant regarding FMLA and he initiated his FLMA

leave application through Defendant's Matrix Absence Management System.

37.     On or about April 5, 2023, Plaintiff's Martin's doctor completed the FMLA paperwork and indicated that Plaintiff Martin was to remain on medical leave from March 29, 2023 through April 10, 2023.

38.     On April 8, 2023, Plaintiff Martin received an AWOL letter from Defendant (dated April 3, 2023), which gave Plaintiff Martin until 4:30pm on April 8, 2023 to submit his medical paperwork.

39.     On April 10, 2023, Plaintiff Martin's doctor submitted his medical leave paperwork to Defendant via facsimile.

40.     Plaintiff Martin followed up this submission with a call to Defendant's HR department to ensure that the paperwork was received, but no one answered. Plaintiff Martin left a voicemail that also went unanswered.

41.     On or about April 17, 2023, Defendant terminated Plaintiff Martin's employment.

### Plaintiff Barton's Attempt to Exercise FMLA Rights

42.     On or about February 24, 2023, Plaintiff Barton sought, and was approved for, FMLA leave from approximately February 28, 2023 until April 16, 2023 for a serious health condition.

43.     Plaintiff Barton submitted all required FMLA paperwork to Defendant's HR department on or about February 27, 2023, in advance of taking her

FMLA leave.

44.    In mid-March 2023, Plaintiff Barton received a call from Defendant's HR department stating that the company never received Plaintiff Barton's FMLA paperwork.  In response, Plaintiff Barton re-sent her paperwork to Defendant via email.

45.    Despite Plaintiff Barton turning in the proper paperwork, receiving approval for her requested FMLA leave, and re-sending the requested paperwork, Defendant terminated Plaintiff Barton's employment on or about March 16, 2023.

46.    Defendant violated the Family Medical Leave Act (29 U.S.C. 2601, *et. seq.*) and the Family Medical Leave Act Regulations (29 C.F.R. 825.100 *et. seq.*) in the following ways:

    a.    Willfully and wrongfully terminated the employment of Plaintiffs and all others similarly situated with violations such as absenteeism, and attempted use of FMLA and alleged misuse of medical leave provided by FMLA, which occurred from regular use of intermittent medical leave provided by FMLA.

    b.    Willfully and wrongfully charged Plaintiffs and all others similarly situated with violations such as absenteeism, and misuse of medical leave provided by FMLA, which occurred from regular use of intermittent medical leave provided by FMLA.

c.  Willfully and wrongfully harassed Plaintiffs and all others similarly situated while on FMLA by requiring them to needlessly re-certify their FMLA provided leave.

d.  Willfully and wrongfully harassed Plaintiffs and all others similarly situated because of their absences from work while on medical leave provided by the FMLA.

e.  Willfully and wrongfully harassed Plaintiffs and all others similarly situated in order to discourage them from future use of medical leave pursuant to the FMLA.

f.  Willfully and wrongfully took intimidating actions against Plaintiffs and all others similarly situated after they sought to take medical leave pursuant to the FMLA.

g.  Willfully and wrongfully retaliated against Plaintiffs and all others similarly situated by taking adverse employment actions for use of FMLA.

47.    Plaintiffs and all others similarly situated had their entitlement to medical leave and/or family leave interfered with by Defendant in violation of the FMLA.

48.    As a direct result of one or more of the aforementioned acts, Plaintiffs and all others similarly situated have lost and will lose economic gains, including

lost wages, benefits, and out-of-pocket expenses, which they have acquired because Defendant violated their rights under the FMLA.

49.     As a proximate result of Defendant's violation of the FMLA and its Regulations, Plaintiffs and all others similarly situated were harmed by Defendant and now seek damages and equitable relief as set forth in this Collective and Class Action Complaint.

## FLSA COLLECTIVE ACTION ALLEGATIONS

50.     Pursuant to 29 U.S.C § 216(b), Plaintiffs bring this action on behalf of all of Defendant's current and former hourly employees who worked for Defendant at any time in the past three years.

51.     Plaintiffs and putative Collective members are "similarly situated" as that term is used in 29 U.S.C § 216(b) because, among other things, all such individuals were eligible for and did receive the shift differential pay, but such pay was not calculated as part of their regular rate as required by the FLSA.

52.     Upon information and belief, Defendant utilized a centralized payroll system which calculated overtime pay for all similarly situated employees in the same or similar manner.

53.     Resolution of Plaintiffs' FLSA claims requires inquiry into common facts.

54.     These similarly situated individuals are known to the Defendant, are readily identifiable, and can be located through Defendant's payroll records, which Defendant is required to maintain pursuant to the FLSA. 29 U.S.C. § 211(c); 29 C.F.R. § 516 *et seq.*

55.     Court-authorized notice of this case as a collective action pursuant to 29 U.S.C § 216(b) is proper and necessary so that these employees may be readily notified of this action through direct U.S. mail and/or other means, including email and text message, and allowed to opt in for the purpose of collectively adjudicating their claims for unpaid overtime compensation, liquidated damages and/or interest, and attorneys' fees and costs under the FLSA.

56.     Upon information and belief, there are at least hundreds of similarly situated current and former employees of Defendant who were not paid their required wages and who would benefit from the issuance of Court-authorized notice of this lawsuit and the opportunity to join it.

## RULE 23 CLASS ACTION ALLEGATIONS

57.     Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of themselves and on behalf of:

> *All current and former hourly employees of Defendant who were terminated, disciplined, and/or discriminated against by Defendant through its policies, patterns, and practices to interfere, retrain, and/or deny the exercise or attempted exercise of their rights under the FMLA in the two years prior to the filing of this action.*

(hereinafter referred to as the "Rule 23 Class").  Plaintiffs reserve the right to amend this definition if necessary.

58.    The members of the Rule 23 Class are so numerous that joinder of all Rule 23 Class members in this case would be impractical.  Plaintiffs reasonably estimate there are dozens, if not hundreds, of Rule 23 Class members.  Rule 23 Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

59.    There is a well-defined community of interests among Rule 23 Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Class.

60.    Plaintiffs' claims are typical of those of the Rule 23 Class in that they and all other Rule 23 Class members suffered damages as a direct and proximate result of the Defendant's common and systemic policies and practices.  Plaintiffs' claims arise from the same policies, practices, promises and course of conduct as all other Rule 23 Class members' claims and their legal theories are based on the same legal theories as all other Rule 23 Class members.

61.    Plaintiffs will fully and adequately protect the interests of the Rule 23 Class and they retained counsel who are qualified and experienced in the prosecution of wage and hour class actions. Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Class.

62. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

63. This case will be manageable as a Rule 23 Class action. Plaintiffs and their counsel know of no unusual difficulties in this case and Defendant has advanced networked computer and payroll systems that will allow the class and damages issues in this case to be resolved with relative ease.

64. Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

65. Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Class and declaratory relief is appropriate in this case with respect to the Rule 23 Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## COUNT I
## VIOLATIONS OF THE FAIR LABOR STANDARDS ACT,
## 29 U.S.C. § 201, *et seq*. -- FAILURE TO PAY OVERTIME

66. Plaintiffs incorporate the foregoing paragraphs as if fully restated herein.

67. Defendant is an employer within the meaning of 29 U.S.C § 203(d).

68. Plaintiffs are employees within the meaning of 29 U.S.C C 203(e).

69. The Fair Labor Standards Act and its implementing regulations require that the regular rate of pay include all forms of remuneration. Section 207(e) outlines eight exceptions where payments to employees may not be included in the regular rate. Defendant's shift premiums do not fall into any of those exceptions.

70. Defendant failed to include shift premiums into the regular rate of pay for Plaintiffs and all others similarly situated when calculating overtime rates. The failure to include this remuneration in overtime computations violates Section 7(a) of the FLSA, because Defendant's hourly employees are working overtime without being paid the statutorily required rates. 29 U.S.C § 207(a).

71. At all relevant times, Defendant had a policy and practice of willfully refusing to pay Plaintiffs and all putative collective members the legally required amount of overtime compensation for all hours worked in excess of 40 hours per workweek, in violation of the FLSA.

72. As a result of Defendant's willful failure to compensate Plaintiffs and

16

the putative collective members at a rate not less than 1.5 times the regular rate of pay for work performed in excess of 40 hours in a workweek, Defendant violated and continues to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including but not limited to 29 U.S.C. §§ 207(a)(1), 215(a), and 29 C.F.R. §§ 778.104. Defendant's conduct as alleged herein constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

73.     Plaintiffs and all others similarly situated are entitled to backpay as well as liquidated damages in an amount equal to their back pay. As a result of Defendant's FLSA violations, Plaintiffs and all others similarly situated are owed overtime wages at a rate to be calculated by taking the difference between the overtime they should have received for each workweek and the overtime they did receive during the same time period calculated using the incorrect regular rate. The exact amount can be readily determined using payroll and other employment records Defendant is statutorily required to maintain under FLSA 29 U.S.C. § 211(c).

74.     Plaintiffs and all others similarly situated are entitled to back pay, liquidated damages, interest, attorney's fees and costs, and other relief as appropriate under the statute. 29 U.S.C. § 216(b).

**COUNT II**
**(Rule 23 Class Action)**

**VIOLATIONS OF THE FAMLY MEDICAL LEAVE ACT**,
**§ 29 U.S.C. §2601, *et seq*. – INTERFERENCE**

75.     Plaintiffs incorporate the foregoing paragraphs as if fully restated herein.

76.     Plaintiffs were eligible "employees" as defined by the FMLA. 29 U.S.C. § 2611(2)(B)(ii).

77.     Defendant is an "employer" as defined by the FMLA.  29 U.S.C. § 2611(4).

78.     Under the FMLA, Plaintiffs were entitled to twelve (12) weeks of medical leave for any twelve (12) month period.  29 U.S.C. § 2612(a)(1).

79.     Plaintiffs applied for medical leaves due to serious medical conditions.

80.     While their FMLA requests were pending, Plaintiffs availed themselves of medical leave as needed and as directed by their physicians.

81.     The FMLA makes it unlawful for any employer to interfere with, restrain, or deny the exercise of, or the attempt to exercise, any right provided under the FMLA. 29 U.S.C. § 2615.

82.     Plaintiffs gave Defendant adequate notice of their serious medical conditions and resulting need for family medical leave, and Defendant interfered

with, restrained, and/or denied the exercise of Plaintiffs' attempts to exercise their protected rights provided under the FMLA.

83.     Defendant knowingly and deliberately engaged in intentional violations of the FMLA and further, acted with malice and/or with reckless indifference to Plaintiffs' rights under the FMLA.

84.     As a direct and proximate result of Defendant's adverse actions, Plaintiffs suffered damages including, but not limited to, loss of past and future income and loss of employee benefits.

**COUNT III**
**(Rule 23 Class Action)**

**VIOLATIONS OF THE FAMLY MEDICAL LEAVE ACT,**
**§ 29 U.S.C. §2601, *et seq*. – RETALIATION**

85.     Plaintiffs incorporate the foregoing paragraphs as if fully restated herein.

86.     Plaintiffs were eligible "employees" as defined by the FMLA. 29 U.S.C. § 2611(2)(B)(ii).

87.     Defendant is an "employer" as defined by the FMLA. 29 U.S.C. § 2611(4).

88.     Under the FMLA, Plaintiffs were entitled to twelve (12) weeks of medical leave for any twelve (12) month period.  29 U.S.C. § 2612(a)(1).

89.     Plaintiffs applied for medical leaves due to serious medical conditions.

90.     While their FMLA requests were pending, Plaintiffs availed themselves of medical leave as needed and as directed by their physicians.

91.     As a result of exercising their rights under the FMLA, Plaintiffs suffered an adverse employment action (involuntary discharge), and Defendant violated the FMLA in the following manner:

     a. Retaliating against Plaintiffs because of a required family medical leave of absence.

     b. Treating Plaintiffs more harshly than employees who did not take a family medical leave of absence.

     c. Terminating Plaintiffs' employment because of a required family medical leave of absence.

     d. Otherwise discriminating against Plaintiffs because of the leave of absence under the FMLA.

92.     There is a causal connection between Plaintiffs' protected FMLA activity and the adverse employment action taken by Defendant.

93.     Defendant knowingly and deliberately engaged in intentional violations of the FMLA and further, acted with malice and/or with reckless indifference to Plaintiffs' rights under the FMLA.

94.     As a direct and proximate result of Defendant's adverse actions, Plaintiffs suffered damages, including but not limited to, loss of past and future income and loss of employee benefits.

## <u>RELIEF REQUESTED</u>

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, requests the following relief:

a. Designation of this action as a collective action pursuant to the FLSA, 29 U.S.C. § 216(b), and an order directing Defendant to provide Plaintiffs a list of all current and former hourly employees who worked for Defendant at any time in the past three years. This list shall include the last known addresses, emails, and telephone number of each such person, so that Plaintiffs can give those individuals notice of this action and an opportunity to make an informed decision about whether to participate.

b. An Order certifying this action as a class action (for the Rule 23 Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiffs' FMLA Interference and Retaliation claims (Count II and Count III);

c. An Order designating Plaintiffs as representatives of the FLSA Collective and the Rule 23 Class; and undersigned counsel as Class counsel for the same;

d. A complete accounting of all the compensation Plaintiffs and all others similarly situated are owed;

e. A declaratory judgment that the practices complained of herein are unlawful under the FLSA;

f. A declaratory judgment that the practices complained of herein are unlawful under the FMLA;

g. A monetary judgment awarding full back pay and an equal amount in liquidated damages;

h. An award of pre-judgment and post-judgment interest;

i. An award of costs and expenses of this action together with reasonable attorneys' fees, and an award of a service payment to the named Plaintiffs; and

j.      Such other and further relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs and all others similarly situated hereby demand trial by jury on all

issues in this Complaint that are so triable as a matter of right.

Date: November 30, 2023                  Respectfully submitted,

*/s/Jesse L. Young*
Jesse L. Young (P72614)
**SOMMERS SCHWARTZ, P.C.**
141 E. Michigan Avenue, Suite 600
Kalamazoo, Michigan 49007
(269) 250-7500
jyoung@sommerspc.com

Kevin J. Stoops (P64371)
**SOMMERS SCHWARTZ, P.C.**
1 Towne Sq., 17th Floor
Southfield, Michigan 48375
(248) 355-0300
kstoops@sommerspc.com

Jonathan Melmed (CA SBN 290218)
Laura Supanich (P85849) (CA SBN 314805)
**MELMED LAW GROUP, P.C.**
1801 Century Park East, Suite 850
Los Angeles, CA 90067
(310) 824-3828
jm@melmedlaw.com
lms@melmedlaw.com

*Attorneys for Plaintiffs and the Proposed Collective and Class*